Mr. Berkovich. Good morning, Your Honor. May it please the Court. There are two summary points about this case that I'd like to start with. The first is that this case presents an important issue of law with broad implications for district courts and the Board, which is whether the prior art needs to show each and every view of a claim design in order to anticipate a design patent. And before the ordinary observer test, as initially announced in Gorham v. White, even needs to be applied. Now, I want to be clear that this is a question of law and not one of substantial evidence as Krox has submitted, because the whole point here is that the Board did not make factual findings. The Board simply did not apply the ordinary observer test and said that it was not possible Well, counsel, I'll go ahead and address that question first because I think there's a lot of other things we have to talk about, too. But as I read the Board's opinion, it didn't say that you have to have every single view. What it said is in this particular case, there were too many aspects of the design that weren't disclosed by the particular view, by the figure 11. So I don't read the Board as having taken a broad legal position that you can't do an ordinary observer analysis whenever views are missing. They simply said that in this particular case, it was impossible to do. Your Honor, I think in some sense that's correct, that the Board did say that it's not taking a firm position that you could never anticipate, but it did not actually apply the ordinary observer test. And it's circular, in our view, to say that it is not possible or there are too many views missing without considering the underlying facts and without actually applying the ordinary observer test. The Board acknowledged the Egyptian goddess rule and said it wasn't doing an element-by-element analysis, simply saying that an ordinary observer couldn't have formed an opinion, at least as of 2003. Your Honor, I think that's correct that the Board announced the Egyptian goddess test. I think it did something different in actual application. And in actual application, the Board did not articulate, for example, the nature of the ordinary observer. The Board did not articulate what the important visual features may have been to the ordinary observer. It made no factual finding as to how crowded or uncrowded the prior art is. It simply misinterpreted the examiner's underlying finding on that. And it did not even consider the disclaimed features in the figures that are supposedly missing. So we would submit as well... Oh, go ahead. I'm sorry. What we would submit is that while missing views may, in some instances, depending on these underlying facts, counsel against a finding of anticipation, because this is a standard of confusion, consumer confusion, effectively, there is no threshold for the number of views that need to be shown in the prior art. And if that were the test, then it would effectively preclude... It would run contrary to Gorham and would effectively preclude anticipation in any instance where the prior art is missing certain views. Because you... Could I express to you a bit of confusion as to what the Board and you and your opposing counsel are talking about? It seems to me where you have a situation where you have, let's say, as with this patent, seven views in the patent and, let's say, two views in the prior art. It seems to me there are two separate questions which have not been separately addressed here. One is whether you can make a determination of anticipation because there may be features in the claim design that aren't clearly shown in the prior art design. In other words, that there are missing features. Another issue is whether there are potentially added features, in other words, designs in the prior art that are missing from the patented design. So which of those two things do you think that the Board here was addressing? It was saying we can't make a determination because we're not sure that the features shown in the patented design exist in the prior art, or is it because there's a possibility that the prior art contains additional design features which aren't in the patent and, therefore, the ordinary observer wouldn't see them as being the same? Do you understand what I'm talking about? I do, Your Honor. And I think the Board was talking about the former because there is no dispute that it is actually a Croc shoe and the same shoe that was on the website, that that is the printed publication. So it is the former in the sense that the prior art supposedly did not show certain views of the claim design in the sense of the prior art was missing those. But I would submit that... Not that the prior art might have had additional features. That's correct, Your Honor. But I would submit that both are potentially relevant, at least as a matter of law, to the ordinary observer test. And the ordinary observer test is supposed to focus on what a consumer, what an ordinary purchaser, not an expert, but what an ordinary purchaser would think and whether they would be confused when viewing the prior art vis-a-vis the claim design. And certainly... Well, didn't the Board say that when you take it back to the correct point in time, which of the design elements or the overall picture, because today we could do that because we've seen them so many times, but the Board was concerned that you would be making too many assumptions about what an ordinary observer would anticipate the rest of the shoe to look like. I don't think that's what the Board found, Your Honor, and that would have required at least a reflection of the underlying facts. What the Board said is, and I'm quoting, it is not possible from the photographs of Figure 11 to determine whether shoe design of Figure 11 is substantially the same as the shoe design claimed in the 789 patent, and later talks about a sufficient gap in the evidence. And the problem that we have is that there was no finding about the evidence. There was no... If we had been in a situation where the Board had articulated what it believed certain important visual features were and certain what the nature of the ordinary observer was and actually correctly opined that the prior art, for example, was crowded and acknowledged the disclaimed features, we might be in a different position, which leads me to the second point that I wanted to make, which is that this case, and I talked about the important consequences here as a rule, but this case is particularly well-suited to address this issue. Well, let's talk about the point that I wanted to talk about first, which is whether we should even be here. I mean, you would concede, would you not, that as of the filing of the complaint that dogs had... I mean, the filing of the appeal, that dogs had been dissolved, right? That's correct, Your Honor. All right. So, dogs would have no capacity to sue except as it relates to its dissolution activities, right? Well, but the question... That may be right with respect to suing, but that's not what we have here in the sense that dogs was sued and under Colorado... Wait a moment. In the Nevada statute that you cite, 78.585, it says explicitly, the dissolved corporation can continue to litigate as a plaintiff, as a party. Thank you, Your Honor. You're right. I may have misquoted that. What I was focused on... And I think that's correct, that for a period of time, that the dissolved corporation can both sue and be sued. And from a standing perspective, there is an active lawsuit where dogs is accused of is the epitome of standing to us. And CROCS has... But it's not really standing, is it? It's capacity to sue, capacity to continue to act. And under state law, dogs does have the capacity to sue and be sued. For a period of time, it can still be sued by creditors. That is the state law. And that is why dogs is still a defendant. But dogs is completely absolved from all liability in connection with the infringement claim. Right? CROCS has not conceded that. No. In fact, CROCS has taken the position that CROCS has definitely not conceded that. Well, they've taken the position that the successor and interest, that the assets that were transferred are subject to a possible offset. But that doesn't mean dogs as a corporation that doesn't exist anymore. It wasn't released. It was clearly released with respect to all the pre-infringement activity. The only thing that was carved out was the fact that the assets might have to answer. The assets now in the hands of somebody else. Our position, Your Honor, if I understand the question, our position is that Mojave, and that's why they have moved to substitute. Mojave now is the successor and interest. The problem that we have here is that CROCS has not conceded that Mojave is the successor and interest, and U.S. state dogs remain the defendant in the underlying litigation. It is, and I think this is the standing question that we're talking about, which is, is there a threat of liability or an offset? But Mojave's been substituted into the underlying litigation. They've been joined. They have been joined. And for this exact reason, and it's because CROCS has not conceded that. And so U.S. state dogs, just the same as we can, we can talk about a line of cases such as Nike v. Adidas, which the court issued this year. There is a, there is a real threat of liability. It's not imaginary in the sense that they remain a defendant. They were not substituted out and CROCS has refused to concede anything, nor have they ever. And so our position, Your Honor, is that, yes, Mojave is the successor and interest, but there's a little bit of a shell game problem going on here from CROCS's side, which is it wants this case dismissed, yet holding on to the fact that U.S. state dogs may still be liable, whether it be affirmative liability or an offset. Even, even the mere fact that, but the fact that they won't concede something doesn't, doesn't make, doesn't change the reality of what it is, right? Well, but it's no different than, than any other case where there is a threat of litigation and somebody files an appeal, for example, in, in Nike v. Adidas, where... Well, what rights does DOGS still have in the re-exam? Our position, Your Honor, is that they don't have any, which is why, which is why Mojave has moved to, to substance. Right. And they didn't as of the point in time that the notice of appeal was filed. That is our position. That is a disputed issue. And what about Mojave? I mean, how can they possibly join this appeal when, to the extent they were, if, even if we accept the fact that they're a successor and interest, they were the ones who should, they were a successor interest long before the notice of appeal was filed. And so they should, under rule 43, it's very clear that they had to have filed the notice of appeal. They can't wait to join after the fact. We, we, we included the, this was a procedural issue, which is the board underlying, in the underlying re-examination, refused to allow Mojave to participate. And so for purposes of the notice of appeal, USA DOGS filed that notice of appeal, but there was a footnote included indicating that Mojave would, would immediately. But the board, no one, but Mojave did not appeal from the board order, right? That, that didn't let them become a third party requester. The board did not decide that issue. The issue that the board decided was whether Mojave could participate in an oral argument. No, that's not true. Go back and look at what the board said. The board decided several different things. I know you argue that in your brief, but that's not what the board did. The board said it's untimely because it should have been done within 20 days of, of becoming a successor in interest. And you didn't present enough evidence to prove to us that you are the successor in interest and it's cited to, to adjuvant. So it, it wasn't just limiting its discussion to the oral argument. Your Honor, all the, all that we asked the board to do at that time was, was for Mojave to be able to argue. That was the first action taken after the asset transfer and all that we have. Well, then that makes it even a stronger case that Mojave has, is not a third party requester. It was a matter of timing, Your Honor. The appeal briefs had already been filed and everything in the case had been, uh, everything in the underlying reexamination, uh, other than the oral argument was finished at the time of the, uh, at the time of the asset transfer. Mojave had no other reason to do that. See, my understanding is in the district court context, uh, that, uh, the addition of a successor in interest is not necessary, not necessary to add it as a party, that it happens automatically and that it's a matter of convenience as to whether the successor in interest is actually added as a party or not. But the parties really haven't briefed this issue very thoroughly. I mean, obviously there's very little law, if any, concerning the board, but there is quite a bit of law in the context of district court rule 25 and appellate rule 43 in district court context. Your Honor, I think as a factual matter, I'm sorry, Your Honor, if I may finish the question. Yeah. So as a factual matter, uh, the parties in the district court did brief the issue that the same issue that's presented here, which is whether, uh, Mojave became the successor in interest for purposes of, and I'll use the term broadly, the, the croc, the set of crocs disputes, uh, and judge Brimmer found that Mojave is the successor in interest, that it did purchase the assets and that issue was, was briefed, was decided. And unlike where, uh, what it was before the board, uh, Mojave actually had a chance to, to be heard, uh, which did not happen in front of the board. Okay. Anything else for Mr. Berkowitz at the moment? Let's save your rebuttal time. Okay. Let's hear from the other side. Mr. Berkowitz. Thank you, Your Honor. And may it please the court, I do want to start, if it's okay with Your Honors, with the standing question, because I think that the discussion previously here has it exactly right. And I want to apologize because I think our papers didn't quite set it out as articulately. The problem here is dogs had no standing at the time it filed the appeal because dogs had no liability for infringement because dogs was dissolved in bankruptcy and all of its liabilities were shed. So it is no different than anyone else because dogs, since dogs had no potential liability for infringement, there is no injury to be redressed with respect to the validity of the seven, eight, nine patents. So dogs has no standing to have. What about Mojave? They have potential liability for infringement, right? So that's the key issue, Your Honor. I absolutely agree. Here's the problem. What should have happened is that Mojave should have filed an appeal from the patent office's decision not to allow Mojave to become the real party in interest. I don't see that you've argued that, but put that aside for a moment. That's not a standing issue. My first question is Mojave has standing, doesn't it, because it's potentially liable for infringement damages. That's not correct, Your Honor. They are not liable for infringement damages. In order for a party to have standing, you've joined them as a defendant in the case, right? They joined themselves, Your Honor, in the case as a counterparty plaintiff, because they claim that they have claims against Crocs. They joined themselves. Are you willing to stipulate at this point that they have no liability for infringement damages? They could have no liability. The only issue that is correct— Answer my question. Are you willing to stipulate now that Mojave has no liability for infringement damages? So I want to answer your question. The only caveat is there is an offset that is potentially speculatively available. But other than that, they absolutely have no infringement for infringement. They have no liability for infringement damages, Your Honor. Absolutely not, because they don't engage in any infringement— But you're not willing to stipulate that they don't have offset liability, right? Well, I would say there is no—under the standard as articulated, they have no liability at this point that is certain. Under the discussion in consumer— Even if Mojave had some potential standing, isn't your better argument that they—and even if they became the successor in interest and could have been able to step into the shoes of DOG for purposes of this appeal—isn't your better argument is that under Rule 43, they had to do that before the filing? They had to make the filing on behalf of DOGS, which would have put them under Rule 43A2. And instead, they didn't. That's correct, Your Honor. They can't now say, because there's not an interim death of the corporation, they can't now say that they should be substituted in. Isn't that the better argument? I think that that is absolutely correct, Your Honor. Did you make that argument in your blue brief? Well, what we discussed—not expressly, Your Honor, no, to directly answer your question. Well, you cite to the rule, do you not? We absolutely cite to the rule. And what our discussion is, is that the way that they did this is that they filed the appeal as DOGS, not Mojave, and tried to do the substitution after, and DOGS couldn't file the appeal. Because the one thing that is indisputably true that everyone agrees to is that DOGS had no right in this proceeding. And if DOGS has no right in the proceeding, DOGS cannot file the appeal. Mojave had to do the substitution, and it had to do the substitution below, because according to what Mojave told the PTAB, Mojave was the only party who had any right to do anything. But what case says that you have to succeed in a motion to substitute in the lower court or lower tribunal? You don't, Your Honor, but you have to then appeal that decision. The proper appeal was for Mojave to appeal. What case says that you have to move below and then appeal that decision? Because I've looked into this, and I'm not aware of any such cases. In fact, the cases seem to say the opposite. What case says that you have to appeal the decision not to be joined as a party in the lower tribunal? I agree with you that there's not a case that says that, Your Honor. The cases say that in order to file appeal, you have to have the right to file an appeal. And DOGS didn't have that right, according to Mojave. Well, there are cases that say, at least, that the appropriate practice, the Supreme Court said itself, that you should go back, in the Marino case, said that you should go to the district court and ask to be substituted at the time that the change in interest occurs, and then you appeal from a decision if the lower court denies it. I mean, the Supreme Court did say that. Whether that applies in the board context or not is a different question. But I guess my question is, even if it doesn't apply, and we would say you automatically get to step into the shoes for purposes of appeal, you know, especially if the board didn't let you participate, but even then, under Rule 43, you have to do it if the change in circumstances occurs before the suit is filed, then Mojave has to be the one to make the filing, right? That's right, Your Honor. Absolutely, Your Honor. Mojave had to file the appeal, because if they had the right, then they had to exercise the right, not file a filing on behalf of DOGS that didn't have any such right. Briefly, if Your Honor's wish, I want to talk about the substance. Thank you. On that, is your position that there are features in the claim design that aren't shown in Figure 11, or is your contention that Figure 11 doesn't preclude the possibility that there are additional features in the prior art? Figure 11 does not show the entire design. No, okay, but help me address my question. Is your position that there are features in the claim design that aren't shown in Figure 11, or is your position that Figure 11 doesn't preclude the possibility of additional features in the prior art? Our position is that Figure 11 doesn't show claimed features, and that in order to do the first, Your Honor. I think the second is also true, but the primary problem here is that the standard requires you to compare a design to the whole design, and that is not possible where the combination reference, Figure 11, doesn't actually contain the whole design. And what's missing from Figure 11? What the board said was missing from Figure 11, including it shows only if you go to page 12 at Appendix 0013, does not show the entire upper with the sidewall or the heel portion. These were findings of fact to thereby establish the ornamental design of the inner side of the shoe, including the design of the sidewall ventilator holes on the inner side wall. Figure 11 fails to show the inner side of the shoe and fails to show the inner side portion of the front, the rear, and the bottom of the shoe. All of those portions of the overall design had features in them. Without a reference for those features, you cannot compare the entire design. And that is, Mojave's argument sort of starts half missing the first part of the standard. And the first part of the standard is that the single prior reference has to be identical in all material respects to the claimed invention. Okay, so what features exactly are missing from Figure 11? As a finding of fact, what the board found was that Figure 11 fails to show the inner side of the shoe and fails to show the inner side portion of the front and the rear. The inside of the shoe? That's right. Like your shoe, if you look down, the outside of your shoe is on your outside right and the left. The inside of the shoe, there is no inside portion of the shoe depicted in Figure 11. It's only two outsides. So the entire inside of the shoe is not depicted in Figure 11. Okay, what else isn't depicted? Or the bottom of the shoe, Your Honor. But the bottom of the shoe is only the contour, right? That's right. There's a contour and there's the outline of the sole. That's right, Your Honor. And what else is missing? Then the rear of the shoe, according to what the PTAB found. Is that it? Yes. Okay. It goes on to sort of more specifically discuss those things, where it says that it doesn't show the entire upper with the sidewall or the heel portion to thereby establish the ornamental design of the inner side of the shoe, including the design of the sidewall ventilator holes on the inner sidewall. But that is subsumed within what I previously said the border found was missing. So if you don't have the entire design, you cannot do a comparison. I... What Mojave argues is... But that sounds as though unless you have the entire design, you can never make a comparison. You have to have sufficient information, Your Honor, in order to know that you are comparing the entire design. I mean, that is what every single case that has discussed this issue says that you have to compare the patented design as a whole to the reference as a whole. And if you don't have a whole design in the reference, you cannot do that comparison if you don't have enough information. I mean, taking their suggestion to the extreme, if there was just a picture of the top of the shoe, and it was identical to the design, then you would be able to do that comparison if that was confusing enough. And you don't have to... You would just be able to throw out all the rest of the design shoe. And there's not been a case ever that has suggested anything like that. In fact, all the cases say exactly the opposite, that it has to be identical in all material respects to the claimed invention. And that's from High Point, that the ordinary observer test applies to the patent design in its entirety as it is claimed. And that's in the Crocs case and the Braun case. And so there's never been a case in which you can have the patent design being compared to a reference that doesn't have the whole design, the whole material design in it for purposes of an anticipation finding. In the cases that they cite, to suggest that whether or not you have enough information to have the whole design is somehow the same thing as just a gross number of views that you are comparing, or none of those cases say that. In the Hup case, they say, well, the advertisement only had one picture in it. That's because when you look at the actual patented issue in the Hup case, there was really only one figure that depicted the entirety of the design, because it was a top-down view and a bottom-up view. They were basically the opposite of one another. In the Leonard case, the Leonard case specifically says that the district court correctly looked at the overall design and didn't actually, and didn't go and try and only look at portions of the design. They say that in the Crocs case, that the fact that this court had pictures of only three views meant that the court in the Crocs case was basically saying that you don't need to look at the entire article in order to do a comparison, and that's just simply not true. The case says that you look at the entire design. I know that the Federal Circuit had the actual shoes of the accused products in that case, and I don't mean to speak to Your Honor about International Seaway, but their argument, I don't think, can be squared with that case, because if a potential difference between one portion of one view of the footbed of a shoe is sufficient to preclude summary judgment, then they can't have anticipation as a matter of law here, because there's so much more information missing in this case, although comparison of the views, then there was an International Seaway. I just want to very briefly go back to the issue of standing and clarify that when Dogg filed the appeal, it didn't have standing because it couldn't have been possibly liable, and that whether or not can't go back and fix Dogg's lack of standing at the filing of the appeal. If there are no further questions on this issue, I would submit Your Honors. Anything else for Mr. Berkowitz? Okay, thank you. Then we'll hear from Mr. Berkowitz on rebuttal. Mr. Berkowitz? I'm sorry, Your Honor. So, thank you. I want to go to the standing issue that came up and, in particular, comment on the notice of appeal issue. So, in our view, the notice of appeal is not a standing question. At all relevant times, either Dogg's or Mojave had standing. There was an immediate transfer of assets, and they had standing. Now, in terms of the notice of appeal, that is a liberal standard under Federal Rule of Appellate Procedure 3. That was an amendment to the advisory committee—amendment to the rule in 1993, and I'll quote the advisory committee note, which we did cite in our motion to substitute. The rule makes it clear that dismissal of an appeal should not occur when it is otherwise clear from the notice that the party intended to appeal. If the court determines it is objectively clear that a party intended to appeal, there are neither administrative concerns nor fairness concerns that should prevent the appeal from going forward. And that rule has been discussed and adopted in a Second Circuit case, as well, that we cited in our motion to substitute. And so, Your Honors, if I may submit that the notice of appeal, the procedural issue of whether Mojave was identified in a footnote or whether it was actually appellant, has no bearing on standing and should not be grounds to dismiss. And with that, I have nothing further, Your Honors, unless there are questions. Any questions for Mr. Berkowitz? Okay. Hearing none, the case is taken under submission. Thanks to both counsel. Thank you. The Honorable Court is adjourned until tomorrow morning at 10 a.m.